During the vacation, the honourable William Bradford, jun'r. Esq. was appointed one of the justices of the Supreme Court, *quamdiu se bene gesserit*, on the twentieth day of August 1791.

Jared Ingersol, Esq. was appointed attorney general on the twenty-second day of August 1791.

Both commissions were published in the Supreme Court September 5th 1791.

## Lessee of Michael Joy et al. assignees of Christian Wirtz, a bankrupt, *against* Theophilus Cossart.

To warrant a commission of bankrupt there must be a *trading*, a debt con*tracted*, and an act of bankruptcy subsequent to the 16th September.

Persons interested may contest the legality of the petitioning creditor's debt: But qu. whether creditors who have received a dividend under the commission are not estopped?

THIS cause came before the court at the last term, on a motion for a new trial, founded on a supposed misdirection of the court to the jury. The case appeared on the trial as follows, being stated by the chief justice.

The lessors of the plaintiff claimed title to a house and lot in the city of Philadelphia, as assignees of the commissioners of bankruptcy of the estate of Christian Wirtz, a bankrupt. The defendant shewed title to the premises under a deed dated 30th June 1787 from the said Wirtz to Dr. Charles Moore. This deed was made *bona fide*, for a valuable consideration, and without notice of any act of bankruptcy. On the 22d May preceding, Wirtz had executed a deed for two other lots to Philip Wager and wife, she being a daughter of said Wirtz, without any consideration in money.

It was contended on the part of the plaintiff that this deed was not only void and fraudulent as to creditors, but an act of bankruptcy.

The counsel for the defendant insisted that this deed did not constitute the crime of bankruptcy, though void against creditors; that Wirtz had never given any thing with his daughter in marriage, and by this deed conveyed the two lots, not worth more than 200l., without any intention of fraud.

They further relied on an exception to the plaintiffs' title, that the petitioning creditors, Joy and Hopkins, had no right to ap*ply for a commission against Wirtz, because no part of their demand accrued after passing the act of assembly respecting bankruptcy. The last item of their ac-

[Joy *v.* Cossart.]

count is charged on the third of June 1785, and the law was enacted on the 16th September 1785.

To which it was replied, that the fact as to the last item was true, but that Wirtz, on the 3d of June 1786, gave a note on the back of the account, promising to pay with interest, which was a contract or transaction subsequent to the passing of the act, and out of the proviso:—and that were this otherwise, no person but the bankrupt could take advantage of it.

The court left it to the jury to determine whether the deed of the 22d May 1787, under all the circumstances given in evidence, was an act of bankruptcy: and if they should conceive it was, which was very probable, yet the court inclined to the opinion, that the debt of the petitioning creditors did not arise after the passing of the act of assembly; and that the subsequent note on the account could not be sued as a promissory note, not being negotiable, and that it did not bring their debt within the meaning of the act: also ·that the defendant had a right to take advantage of this, as well as the bankrupt.

However, if the verdict should be for the defendant on these grounds, the court reserved these two points for further discussion, in case the plaintiff should think proper to move for a new trial.

Verdict for defendant.

The motion for the new trial was argued at the last July term, by Messrs. Lewis, Tilghman, and A. Morris, for the plaintiff, and Messrs. Ingersol, Sergeant, and Rawle, for the defendant.

It was urged on the part of the plaintiff, that a bankrupt was considered as a criminal in the eye of the law, and it was therefore necessary that the act for regulation of bankruptcy should not have a retrospective view. The proviso in the act (3 State Laws, 645) that the debt or demand must have arisen after the passing of the act, was introduced for the benefit of the creditors, or at least of the bankrupt himself. But the maxim is *quisquis potest renunciare juri pro se introducto.* The whole system of policy respecting the bankrupt acts, was evidently grounded on the interests of the creditors in general, and not of any individual purchasers, however fair or honest. The preamble of *the act [*52 fully proves, that the object of the legislature was to divide the whole property of the bankrupt rateably among his creditors, from the time of the act of bankruptcy committed. All the acts of bankruptcy are to be construed favourably for creditors, and so as to suppress fraud. 1 Burr. 474. The management of the bankrupt's estate and an equal distribution of the property amongst the creditors, are the

1 Yeates—4

[Joy *v.* Cossart.]

two main objects which the whole bankrupt law has in view. Ibid. 476.

The doctrine of relation in case of a sale after an act of bankruptcy committed, is established, to prevent fraud; and though it may sometimes occasion particular inconveniences, yet it is considered as conducive to the general good of the public. The statutes make all conveyances and acquisitions of property void, by, from, or under the bankrupt, and the property of the assignees to be good and valid. 1 Blackst. Rep. 68.

The memorandum indorsed on the account, altered the nature of the debt from Wirtz to Joy and Hopkins. It gave them a new remedy, for under it they might have brought *insimul computasset*. It is substantially as much a debt or demand, which has arisen on a contract or transaction subsequent to the passing of the bankrupt law, as the case of a bond given for a debt previously existing; and the practice has been frequent to enter into voluntary bonds for old debts, for the very purpose of obtaining a commission. Dall. 389, 386.

But should this point be doubtful, or the law clearly otherwise, the plaintiff's counsel contended, that no one but the bankrupt could take advantage of it. On a suit brought by the assignees of a bankrupt for a debt justly due to him, objection was made by the defendant, that the debt of the petitioning creditor being created above six years previous to the application for the commission, could not warrant the subsequent proceedings; but the court overruled the objection, saying, it did not lie in the mouth of a third person to make the objection; the bankrupt alone could do it, but he has waived it by appearing, and submitting to the commission, and being examined under it; and this amounts to an acknowledgment of the debt. 5 Burr. 2628. A third person shall not take advantage of a petitioning creditor's debt. 1 Term Rep. 407.

It was insisted on the part of the defendant, that the debt of the petitioning creditors was not a sufficient ground for awarding the commission, it not being a debt or demand which had arisen on a contract or transaction subsequent to the 16th September 1785. The last item of the account of Joy and Hopkins is charged on 3d June 1785. The subsequent agreement indorsed * thereon gave the parties no new right or remedy. An action of debt could not be maintained on it; nor could it be sued as a promissory note, as it did not specify any certain sum, agreeably to the act of assembly passed 28th May 1715. (Old ed. of Laws, pa. 58.) It is true, the memorandum would support *insimul computasset;* but this species of action, it has been resolved, gives no new right; it only ascertains an old one. 1 Salk. 207, 208. S. C. cited Sayer's Law of Costs, 88. Taking a

[Joy v. Cossart.]

note from a bankrupt does not preclude the original demand, unless the party should be guilty of negligence. 1 Term Rep. 408. And legislative interference was found necessary in this very matter. Ibid. The subsequent agreement amounts merely to an acknowledgment of a preceding debt, and to pay interest. It cannot be compared to a bond, which extinguishes the original debt, and gives the party a superior remedy.

As to the latter point, a great variety of cases may be cited from the books, to shew that in England, the proceedings on a commission of bankruptcy are open to full investigation by all persons interested therein. Such are 1 Term Rep. 573. 2 Blacks. Rep. 728. 2 Stra. 744, 1004. Cowp. 398, 427. 2 Wils. 384. The same doctrine has been solemnly determined in the Common Pleas of Philadelphia county, after the fullest argument. Dall. 381. But it is said for the plaintiff, that none but the bankrupt can make objection to the legality of the petitioning creditor's debt. If the law were so, it would certainly be put into the power of a bankrupt, by collusion with a creditor, to defeat the just right of any fair purchaser. And why should a third person have it in his power to examine and controvert every proceeding from the commission of bankruptcy commencing, except the petitioning creditor's debt, when the interests of such person are to be affected?

The following requisites must be proved in every suit brought by the assignees of a bankrupt.—1st, That the bankrupt was a trader within the statutes. 2d, The act of bankruptcy. 3d, The petitioning creditor's debt. 4th, The commission regularly granted. 5th, The assignment; and 6th, The property in the bankrupt. 2 Espin. 297. Bull. Nisi Prius, 4to ed. 37, 39, 40. Though the bankrupt acquiesce in a commission, still it may be controverted. Cowp. 823 (in notis.) This very point was fully gone into in the case of Pleasants v. Meng et al. Dall. 388.

The chief justice this term delivered the unanimous opinion of the court. He stated the case fully as it appeared on the trial. The two points have been very fully and ably argued, and many cases have been read out of the books much to the purpose.

*We think the debt of the petitioning creditors did not warrant the commission of bankruptcy taken out [*54 on the 11th October 1788. The words of the first proviso in the 3d section of the act "for regulation of bankruptcy" are, "that the debt or debts, demand or demands, of such creditor "or creditors, so as aforesaid, entitled to apply for and pro- "cure a commission to be issued against any such bankrupt, "shall have arisen subsequent to the passing of this act." Now this act passed on 16th September 1785.

It appears that the legislature were scrupulously cautious

[Joy *v.* Cossart.]

to do nothing which might in any wise affect contracts or dealings, previous to that time. To come under this law, there must be a trading, a debt contracted, and an act of bankruptcy, all posterior to its date.

Now it is confessed, that the whole of the account of Messrs. Joy and Hopkins against Christian Wirtz, was prior to the date of the act, and the sole question is, whether the memorandum indorsed on the account and signed by Wirtz on 3d June 1786, will create a debt of that date.

No action of debt could be maintained on this writing; of itself merely, it cannot raise a duty. No action will lie on it as a promissory note, because it is not negotiable. Indeed an *insimul computasset* would lie, but that is on the old duty, and derivative. Besides, the memorandum operates no extinguishment of the debt, for the merchandise sold before. It does not alter the old duty, nor does it in any degree dignify it, or give a better remedy to the parties. It therefore still remains a debt, arising on a contract prior to the passing of the law. This seems to be too plain to require being enlarged upon. See 2 Black. Com. 465. Dall. 389, 423.

The second point is, that this exception could be taken by the bankrupt, but by no other person. If any person is injured by a transaction between others, reason points out that he should be permitted to shew that the act was unlawful. Though the proceedings of commissioners of bankrupt in England, are almost in every stage, examinable by the Lord Chancellor, yet the trading, act of bankruptcy, commission and certificate, have been severally subjects of litigation in their courts of law, for which see numerous cases cited by the counsel, in Dall. Rep. 381, and 2 Burr. 932 and 934, which very much resemble the present case. We do not think it should be in the power of any two persons by any contrivance between them, to defeat a third person of his estate, without his concurrence or default. This would be giving an unjust operation to the act of assembly, by an *ex post facto* proceeding. How far the creditors who have \*received a distribution under this commission, may be estopped from taking advantage of this exception, we need not say; but we are clear that Dr. Charles Moore is not thus precluded.

Upon the whole, the court are unanimously of opinion, that the rule to shew cause why a new trial should not be granted, be discharged.

Judgment *pro def.*